| | |
|---|---|
| LEVEL HEATING AND AIR CONDITIONING COMPANY, | * |
| | *   IN THE |
| And | |
| | *   UNITED STATES |
| UPPER BAY MECHANICAL, INC. | |
| | *   DISTRICT COURT |
| *Plaintiffs*, | |
| v. | *   FOR THE |
| | |
| PATRIOT CONSTRUCTION, LLC, | *   DISTRICT OF |
| 3140 W. Ward Rd., Suite 203 | |
| Dunkirk, MD 20754 | *   MARYLAND |
| | |
| | * |
| SERVE ON: Matthew Timbario, Resident Agent | |
| 9510 Covenant Court | * |
| Owings, MD 20736 | |
| | *   CASE NO: |
| | |
| | * |
| HARTFORD CASUALTY INSURANCE COMPANY | * |
| Hartford Plaza | |
| Hartford, CT 06115 | * |
| | |
| | * |
| SERVE ON: Maryland Insurance Administration | |
| 200 St. Paul Place, Suite 2700 | * |
| Baltimore, MD 21202 | |
| | * |
| *Defendants.* | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT

Plaintiffs Level Heating and Air Conditioning Company ("Level") and Upper Bay Mechanical, Inc. ("Upper Bay," and collectively with Level, "Plaintiffs"), by and through their attorneys, hereby filed this Complaint against Defendants Patriot Construction, LLC ("Patriot") and Hartford Casualty Insurance Company ("the Surety," and collectively with Patriot, "Defendants"), and in support states as follows:

1

## JURISDICTION AND PARTIES

1. Level is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business located at 601 N. Juniata Street, Havre De Grace, Maryland 21078. Level is in the business of providing HVAC and plumbing services.

2. Upper Bay is a corporation organized and existing under the laws of the state of Maryland, with its principal place of business located at 601 N. Juniata Street, Havre De Grace, Maryland 21078. Upper Bay is in the business of providing HVAC and plumbing services, and was created by the owners of Level to provide such services to the federal government at Aberdeen Proving Ground.

3. Patriot is a limited liability company organized and existing under the laws of the State of Maryland, with its principal place of business located at 3140 W. Ward Road, Suite 203, Dunkirk, Maryland 20754. Patriot is in the business of providing general construction services to the federal government.

4. The Surety is a corporation formed and organized under the laws of the State of Connecticut and registered to do business in Maryland, with its principal place of business located at Hartford Plaza, Hartford, CT 06115. The Surety is in the business of providing a variety of insurance coverages and surety bonds. The Surety has no resident agent recorded with the Maryland State Department of Assessments and Taxation.

5. This Court has subject matter jurisdiction pursuant to 40 U.S.C. § 3133 and 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Patriot because, *inter alia*, it was formed and organized under the law of the State of Maryland, and it has consented to such jurisdiction.

7.      This Court has personal jurisdiction over the Surety pursuant to, *inter alia*, 40 U.S.C. § 3133.

8.      Venue is proper in this district pursuant to, *inter alia*, 40 U.S.C. § 3133 because this is the district in which the contract was performed and executed.

## FACTS COMMON TO ALL COUNTS

### A.    Building 310.

9.      On or about January 10, 2019, Level and Patriot entered into a contract ("the 310 Contract") for, among other things, the furnishing and installation of HVAC, plumbing, and ductwork ("the Building 310 Work") on Building 310 at Aberdeen Proving Ground ("the 310 Project"). The 310 Contract is attached hereto and incorporated herein as **Exhibit 1**.

10.     The 310 Contract was initially for a price of $178,677.00, but was immediately increased to $840,000.00 by change order following execution. Of the increased contract price for the Building 310 Work, $330,000.00 was profit to Level.

11.     The 310 Contract includes the following termination clause:

> If SUBCONTRACTOR at any time refuses or neglects to supply sufficient, properly skilled workers, or materials or equipment of the proper quality and quantity, or fails in any respect to prosecute the Work with promptness and diligence or to maintain the schedule of Work, or causes by any action or omission the stoppage or interference of Work of PATRIOT or any other subcontractor or fails in the performance of any of the covenants contained in this Agreement, or be unable to meet its debts as they mature, <u>PATRIOT may at its option and at any time after serving three calendar days' notice of such default, terminate this Agreement by delivering written notice of termination to SUBCONTRACTOR.</u> Thereafter, PATRIOT may take possession of the plant and Work, materials, tools, appliances, and equipment of SUBCONTRACTOR at the building site, and through itself or others provide labor, equipment and materials to prosecute SUBCONTRACTOR's Work on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, including all charges, expenses, losses, costs, damages and attorneys' fees incurred as a result of SUBCONTRACTOR's failure to perform from any money due or thereafter to become due to SUBCONTRACTOR. <u>If PATRIOT so terminates this Agreement, SUBCONTRACTOR shall not be entitled to any further</u>

3

> payment under this Agreement until SUBCONTRACTOR's Work has been completed and accepted by OWNER and payment has been received by PATRIOT from OWNER with respect thereto.
>
> In the event that the unpaid balance due exceeds PATRIOT's cost of completion, the difference shall be paid to the SUBCONTRACTOR; but if such expense exceeds the balance due, SUBCONTRACTOR agrees to promptly pay the difference to PATRIOT.
>
> PATRIOT shall have the right to terminate this Agreement, by written notice, without SUBCONTRACTOR being in default for any cause or for its own or OWNER's convenience, and require SUBCONTRACTOR to immediately stop Work. In such event, PATRIOT shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT from OWNER. PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed.

### B. Building 4118.

12. On or about April 14, 2019, Upper Bay and Patriot entered into a contract ("the 4118 Contract") for, among other things, the furnishing and installation of ductwork and exhaust fans ("the Building 4118 Work") on Building 4118 at Aberdeen Proving Ground ("the 4118 Project"). The 4118 Contract is attached hereto and incorporated herein as **Exhibit 2**.

13. The 4118 Contract was for the price of $52,355.00. Of the contract price for the Building 4118 Work, $21,000.00 was profit to Upper Bay.

14. The 4118 Contract includes the following termination provision:

> If SUBCONTRACTOR at any time refuses or neglects to supply sufficient, properly skilled workers, or materials or equipment of the proper quality and quantity, or fails in any respect to prosecute the Work with promptness and diligence or to maintain the schedule of Work, or causes by any action or omission the stoppage or interference of Work of PATRIOT CONSTRUCTION or any other subcontractor or fails in the performance of any of the covenants contained in this Agreement, or be unable to meet its debts as they mature, PATRIOT CONSTRUCTION may at its option and at any time after serving three calendar days notice of such default, terminate this Agreement by delivering written notice of termination to SUBCONTRACTOR. Thereafter, PATRIOT CONSTRUCTION may take possession of the plant and Work, materials, tools, appliances, and

4

>equipment of SUBCONTRACTOR at the building site, and through itself or others provide labor, equipment and materials to prosecute SUBCONTRACTOR's Work on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, Including all charges, expenses, losses, costs, damages and attorneys' fees Incurred as a result of SUBCONTRACTOR'S failure to perform from any money due or thereafter to become due lo SUBCONTRACTOR. <u>If PATRIOT CONSTRUCTION so terminates this Agreement, SUBCONTRACTOR shall not be entitled to any further payment under this Agreement until SUBCONTRACTOR's Work has been completed and accepted by OWNER and payment has been received by PATRIOT CONSTRUCTION from OWNER with respect thereto.</u>
>
>In the event that the unpaid balance due exceeds PATRIOT CONSTRUCTION's cost of completion, the difference shall be paid to the SUBCONTRACTOR; but if such expense exceeds the balance due, SUBCONTRACTOR agrees to promptly pay the difference to PATRIOT CONSTRUCTION.
>
>PATRIOT CONSTRUCTION shall have the right to terminate this Agreement, by written notice, without SUBCONTRACTOR being in default for any cause or for its own or OWNER's convenience, and require SUBCONTRACTOR to immediately stop Work. In such event, PATRIOT CONSTRUCTION shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT CONSTRUCTION from OWNER. PATRIOT CONSTRUCTION shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed.

**C.     Building 4220.**

15.    On or about July 19, 2019, Upper Bay and Patriot entered into a contract ("the 4220 Contract," and collectively with the 310 Contract and the 4118 Contract, "the Contracts") for, among other things, the furnishing and installation of HVAC, plumbing, and fire alarm systems ("the Building 4220 Work") on Building 4220 at Aberdeen Proving Ground ("the 4220 Project," and collectively with the 310 Project and the 4118 Project, "the Projects"). The 4220 Contract is attached hereto and incorporated herein as **Exhibit 3**.

16.    The 4220 Contract was for the price of $1,266,879.00. Of the contract price for the Building 4220 Work, $315,000.00 was profit to Upper Bay.

17. The 4220 Contract includes the following termination clause:

> If SUBCONTRACTOR at any time refuses or neglects to supply sufficient, properly skilled workers, or materials or equipment of the proper quality and quantity, or fails in any respect to prosecute the Work with promptness and diligence or to maintain the schedule of Work, or causes by any action or omission the stoppage or interference of Work of PATRIOT or any other subcontractor or fails in the performance of any of the covenants contained in this Agreement, or be unable to meet its debts as they mature, PATRIOT may at its option and at any time after serving three calendar days' notice of such default, terminate this Agreement by delivering written notice of termination to SUBCONTRACTOR. Thereafter, PATRIOT may take possession of the plant and Work, materials, tools, appliances, and equipment of SUBCONTRACTOR at the building site, and through itself or others provide labor, equipment and materials to prosecute SUBCONTRACTOR's Work on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, including all charges, expenses, losses, costs, damages and attorneys' fees incurred as a result of SUBCONTRACTOR's failure to perform from any money due or thereafter to become due to SUBCONTRACTOR. If PATRIOT so terminates this Agreement, SUBCONTRACTOR shall not be entitled to any further payment under this Agreement until SUBCONTRACTOR's Work has been completed and accepted by OWNER and payment has been received by PATRIOT from OWNER with respect thereto.
>
> In the event that the unpaid balance due exceeds PATRIOT's cost of completion, the difference shall be paid to the SUBCONTRACTOR; but if such expense exceeds the balance due, SUBCONTRACTOR agrees to promptly pay the difference to PATRIOT.
>
> PATRIOT shall have the right to terminate this Agreement, by written notice, without SUBCONTRACTOR being in default for any cause or for its own or OWNER's convenience, and require SUBCONTRACTOR to immediately stop Work. In such event, PATRIOT shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT from OWNER. PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed.

### D.  The Work at the Projects.

18. Plaintiffs began work on each project shortly after the execution of their respective contracts.

6

19.     On or about January 23, 2020, and after Plaintiffs had commenced work on the Projects, the owner ordered Patriot to halt work, who then ordered that Plaintiffs halt work on the Projects.

20.     In or about June 2020 ("the Recommencement Date"), the owner recommenced work on the Projects, and Patriot likewise recommenced work on the Projects.

21.     Plaintiffs were not requested to mobilize or recommence their work under the Contracts at any time following the stop work order, including any time following the Recommencement Date.

22.     Following the Recommencement Date, Plaintiffs learned that Patriot had elected to hire another contractor to complete the Building 310 Work for which Level had been contracted.

23.     Following the Recommencement Date, Plaintiffs also learned that the Building 4220 Work had been re-bid to another contractor, notwithstanding the 4220 Contract.

24.     On or about May 2, 2020, Patriot emailed Plaintiffs and attempted to terminate the Contracts.

25.     At no time prior to Patriot's purported termination of the Contracts had they provided notice of default to Plaintiffs and afforded Plaintiffs an opportunity to cure, pursuant to the Contracts.

26.     The termination of the Contracts for-cause by Patriot was wrongful and in violation of the terms of each of the respective Contracts, entitling Plaintiffs to the value of the profits lost pursuant to the Contracts.

27.     Despite repeated demands, Patriot has failed to pay the amount remaining due under the Contracts.

**COUNT I**
**Breach of Contract – The 310 Contract**
**(As to Patriot)**

28. Upper Bay and Level hereby incorporates by reference each of the allegations set forth above into this Count, as if each was fully set forth herein.

29. Level entered into the 310 Contract with Patriot for the 310 Building Work at the 310 Project.

30. Level performed the 310 Building Work and fulfilled its obligations pursuant to the 310 Contract and changes.

31. Patriot wrongfully purported to terminate the 310 Contract by failing to provide Level with at least three calendar days' notice of any alleged default, and provide an opportunity for Level to cure any such alleged default, thereby materially breaching its contract with Level.

32. Had Patriot not wrongfully terminated the 310 Contract, Level would have made an additional $330,000.00 in profit for completed work on the 310 Project.

33. To date, Patriot has paid $30,000.00 leaving a balance of $330,00.00 in lost profit following the wrongful termination.

34. Despite repeated demand, Patriot refused to pay, and did not pay, the remaining balance owed under the 310 Contract.

35. The value of the compensatory damages incurred by Level is $330,000.00.

36. Pursuant to the 310 Contract, Level is entitled to attorney fees, costs, and expenses.

WHEREFORE, Level Heating & Air Conditioning Company, Inc. and Upper Bay Mechanical, Inc., Plaintiffs, hereby seek an award for compensatory damages against Patriot Construction, LLC in the amount of $330,000.00, plus attorney fees, costs and post-award interest at the statutory rate of ten percent (10%) per annum, and respectfully request that this Court grant such and other further relief as may be appropriate herein.

## COUNT II
### Breach of Contract – the 4118 Contract

**(As to Patriot)**

37. Upper Bay and Level hereby incorporates by reference each of the allegations set forth above into this Count, as if each was fully set forth herein.

38. Upper Bay entered into the 4188 Contract with the Patriot for the 4118 Building Work at the 4118 Project.

39. At all times relevant, Upper Bay fulfilled its obligations pursuant to the 4188 Contract.

40. Patriot wrongfully purported to terminate the 4118 Contract by failing to provide Upper Bay with at least three calendar days' notice of any alleged default, and provide an opportunity for Upper Bay to cure any such alleged default, thereby materially breaching its contract with Upper Bay.

41. Had Patriot not wrongfully terminated the 4118 Contract, Upper Bay would have made $21,000.00 in profit for completed work on the 4118 Project.

42. To date, Patriot has not paid any portion of the $52,000.00 original contract price leaving a balance of $21,000.00 in lost profit.

43. Despite repeated demand, Patriot refused to pay, and did not pay, the remaining balance owed under the 4118 Contract.

44. The value of the compensatory damages incurred by Upper Bay is $21,000.00.

45. Pursuant to the 4118 Contract, Upper Bay is entitled to attorney fees, costs, and expenses.

WHEREFORE, Upper Bay Mechanical, Inc. and Level Heating & Air Conditioning Company, Inc., Plaintiffs, hereby seek an award for compensatory damages against Patriot Construction, LLC in the amount of $21,000.00, plus attorney fees, costs and post-award interest at the statutory rate of ten percent (10%) per annum, and respectfully request that this Court grant such and other further relief as may be appropriate herein.

## COUNT III
## Breach of Contract – The 4220 Contract
## (As to Patriot)

46. Upper Bay and Level hereby incorporates by reference each of the allegations set forth above into this Count, as if each was fully set forth herein.

47. Upper Bay entered into the 4220 Contract with the Patriot for the 4220 Building Work at the 4220 Project.

48. Upper Bay performed the 4220 Building Work and fulfilled its obligations pursuant to the 4220 Contract up and until Patriot wrongfully terminated the 4220 Contract.

49. Patriot wrongfully terminated the 4220 Contract by failing to award Upper Bay the new contract and failing to provide Upper Bay with at least three calendar days' notice of any alleged default, and provide an opportunity for Upper Bay to cure any such alleged default, thereby materially breaching its contract with Upper Bay.

50. Had Patriot not wrongfully terminated the 4220 Contract, Upper Bay would have made an additional $315,000.00 in profit for completed work on the 4220 Project.

51. To date, Patriot has paid $100,000.00 leaving a balance of $315,000.00 in lost profit following the wrongful termination.

52. Despite repeated demand, Patriot refused to pay, and did not pay, the remaining balance owed under the 4220 Contract.

53. The value of the compensatory damages incurred by Upper Bay is $315,000.00.

54. Pursuant to the 4220 Contract, Upper Bay is entitled to attorney fees, costs, and expenses.

WHEREFORE, Upper Bay Mechanical, Inc. and Level Heating & Air Conditioning Company, Inc., Plaintiffs, hereby seek an award for compensatory damages against Patriot Construction, LLC in the amount of $315,000.00, plus attorney fees, costs and post-award interest

at the statutory rate of ten percent (10%) per annum, and respectfully request that this Court grant such and other further relief as may be appropriate herein.

## COUNT VI
## Miller Act Bond Claim (40 U.S.C. § 3133)
## (As to the Surety)

55. Upper Bay and Level hereby incorporates by reference each of the allegations set forth above into this Count, as if each was fully set forth herein.

56. In or about July 2017, Patriot entered into a contractual agreement with the U.S. Army Corps of Engineers whereby Patriot was to be the primary contractor with regard to certain construction work on the Project.

57. The Surety was the surety on the Project and on September 27, 2017 it provided a payment bond in the amount of $1,000,000.00.

58. Because this was a federal construction project, the provisions of the Miller Act apply.

59. Plaintiffs entered into the Contracts with Patriot to perform the furnishing and installing of mechanical systems at the Projects.

60. Patriot has breached the Contracts by failing to pay Plaintiffs for all amounts due and owing to Plaintiffs under the Contracts for work performed and labor supplied for the Projects.

61. Plaintiffs last performed work on the Projects on or after November 1, 2019.

62. The total amount due Plaintiffs under the Contracts is $2,156,000.00. Patriot has paid Plaintiffs $130,000.00 of that, leaving a balance in the amount of $666,000.00 in lost profits.

63. Plaintiffs have demanded the sum of $666,000.00 from Patriot.

64. More than ninety (90) days have passed since the demanded sum was invoiced and payment has not been received by Plaintiffs.

65. In accordance with the Miller Act, Plaintiffs, a subcontractor, are entitled to sue on the Bond.

WHEREFORE, Plaintiffs Upper Bay Mechanical, Inc. Level Heating & Air Conditioning Company, Inc. respectfully request that this Court: (A) enter judgment in its favor and against Defendant Hartford Casualty Insurance Company in this action, for (i) compensatory damages in an amount exceeding $75,000.00, to be proven at trial, (ii) the costs of this action, and (iii) post-judgment interest at the legal rate, from the date of judgment until all amounts due under the judgment are paid in full; and (B) grant it such other and further relief as the nature of its cause may require.

    */s/ Catherine Lawrence*
Catherine Lawrence, Esq./MD Fed. Bar #29608
Michael Lentz, Esq./MD Fed. Bar #26097
LAWRENCE LAW, LLC
323 W. Camden Street, Suite 700
Baltimore, Maryland  21201
(410) 837-6995
(410) 837-6995 (facsimile)
Kate@lawrencelawllc.com
michael@lawrencelawllc.com
*Attorneys for Plaintiffs*