**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LEVEL HEATING AND AIR CONDITIONING COMPANY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>PATRIOT CONSTRUCTION, LLC, et al.<br><br>Defendants. | *<br>*<br>*<br>*   Case No. 1:20-cv-03154-CCB<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**COME NOW** Defendants, Patriot Construction, LLC ("Patriot") and Hartford Casualty Insurance Company ("Hartford"), by and through their undersigned counsel, and respectfully submit their Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint.

**I.  Introduction**

On October 29, 2020, Plaintiffs Level Heating and Air Conditioning Company ("Level") and Upper Bay Mechanical, Inc. ("Upper Bay") filed a Complaint in the above-captioned matter, asserting claims for breach of contract against Patriot (Counts I, II and III) and a Miller Act bond claim (40 U.S.C. § 3133) against Hartford (Count IV). The breach of contract claims are based on subcontract agreements that Plaintiffs entered into with Patriot, which Plaintiffs allege Patriot wrongfully terminated without cause. As a result, Plaintiffs aver that they are entitled to $666,000.00 in lost profits that they did not realize on the subcontracts from work that they did not perform. Plaintiffs further contend, in their Miller Act bond claim, that they are entitled to sue for the same $666,000.00 in lost profits on the bond that Hartford provided on the project.

Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted or for lack of subject matter jurisdiction. Plaintiffs' breach of contract claims against Patriot assert that Patriot wrongfully terminated its contracts with Plaintiffs and that Plaintiffs have been damaged as a result of their lost profits. However, each of the contracts at issue provides that Patriot can terminate the contract for any cause or for its own convenience and that Plaintiffs waive their right to claim lost profits. Plaintiffs' claims against Hartford are based on the Miller Act, which is designed to give subcontractors an avenue to collect amounts due for work *performed* and materials *provided* on federal projects where remedies like mechanics' liens are not available. The Miller Act does not provide a vehicle for a subcontractor to seek lost profits. As a result, Plaintiffs' claims against Patriot and Hartford fail, and their Complaint should be dismissed.

Plaintiffs' breach of contract claims against Patriot are solely based on state law. Plaintiffs contend that this Court has supplemental jurisdiction over the breach of contract claims presumably because this Court has original jurisdiction over Plaintiffs' federal Miller Act bond claim. This Court should dismiss this case for lack of subject matter jurisdiction or should otherwise abstain from exercising jurisdiction over Plaintiffs' state law claims because: (1) Plaintiffs' Miller Act bond claim is meritless and should be dismissed, thereby removing any basis for this Court to exercise jurisdiction over the remaining claims; (2) Plaintiffs' state law claims predominate over their federal Miller Act bond claim; and (3) the contracts upon which Plaintiffs' claims are based each has a mandatory arbitration provision.

**II.     Factual Allegations**

Level and Upper Bay are in the business of providing HVAC and plumbing services. Complaint at ¶¶ 1, 2. Upper Bay was created by the owners of Level for the purposes of providing services at Aberdeen Proving Ground to the federal government. Complaint at ¶ 2. Patriot provides

general construction services to the federal government. Complaint at ¶ 3. Hartford is in the business of providing a variety of insurance coverages and surety bonds. Complaint at ¶ 4.

On or about January 10, 2019, Level and Patriot entered into a contract ("the 310 Contract") for the furnishing and installation of HVAC, plumbing, and ductwork ("the Building 310 Work") on Building 310 at Aberdeen Proving Ground ("the 310 Project"). Complaint at ¶ 9. The 310 Contract is attached to Plaintiffs' Complaint at Exhibit 1.

The 310 Contract was initially for a price of $178,677.00, but it was increased to $840,000.00 by change order. Complaint at ¶ 10. According to Level, of the increased contract price for the Building 310 Work, $330,000.00 would be profit to Level. *Id.* The 310 Contract includes termination clause, which provides in pertinent part:

> PATRIOT shall have the right to terminate this Agreement, by written notice, without SUBCONTRACTOR being in default **for any cause or for its own or OWNER's convenience, and require SUBCONTRACTOR to immediately stop Work**. In such event, PATRIOT shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT from OWNER. **PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed**.

Complaint at ¶ 11 (emphasis added).

On or about April 14, 2019, Upper Bay and Patriot entered into a contract ("the 4118 Contract") for the furnishing and installation of ductwork and exhaust fans ("the Building 4118 Work") on Building 4118 at Aberdeen Proving Ground ("the 4118 Project"). Complaint at ¶ 12. The 4118 Contract is attached as Exhibit 2 to Plaintiffs' Complaint.

The 4118 Contract was for the price of $52,355.00. Complaint at ¶ 13. According to Upper Bay, of the contract price for the Building 4118 Work, $21,000.00 would be profit to Upper Bay. *Id.* The 4118 Contract includes a termination provision, which provides, in pertinent part:

> PATRIOT CONSTRUCTION shall have the right to terminate this Agreement, by written notice, **without SUBCONTRACTOR being in default for any cause or**

3

> *for its own or OWNER's convenience*, and require SUBCONTRACTOR to immediately stop Work. In such event, PATRIOT CONSTRUCTION shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT CONSTRUCTION from OWNER. **PATRIOT CONSTRUCTION shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed**.

Complaint at ¶ 14 (emphasis added).

On or about July 19, 2019, Upper Bay and Patriot entered into a contract ("the 4220 Contract," and collectively with the 310 Contract and the 4118 Contract, "the Contracts") for the furnishing and installation of HVAC, plumbing, and fire alarm systems ("the Building 4220 Work") on Building 4220 at Aberdeen Proving Ground ("the 4220 Project," and collectively with the 310 Project and the 4118 Project, "the Projects"). Complaint at ¶ 15. The 4220 Contract is attached as Exhibit 3 to Plaintiffs' Complaint.

The 4220 Contract was for the price of $1,266,879.00. Complaint at ¶ 16. According to Upper Bay, of the contract price for the Building 4220 Work, $315,000.00 would be profit to Upper Bay. *Id.* The 4220 Contract includes a termination clause, which provides, in pertinent part:

> PATRIOT shall have the right to terminate this Agreement, by written notice, **without SUBCONTRACTOR being in default for any cause or for its own or OWNER's convenience**, and require SUBCONTRACTOR to immediately stop Work. In such event, PATRIOT shall pay SUBCONTRACTOR for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by PATRIOT from OWNER. **PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed.**

Complaint at ¶ 17 (emphasis added).

In or about July 2017, Patriot entered into a contractual agreement with the U.S. Army Corps of Engineers under which Patriot was to be the primary contractor for certain construction work on the Projects. Complaint at ¶ 56. Hartford was the surety on the Project and provided a payment bond in the amount of $1,000,000.00. Complaint at ¶ 57.

On or about January 23, 2020, and after Plaintiffs had commenced work on the Projects, the owner ordered Patriot to halt work, and Patriot then ordered the Plaintiffs to halt work on the Projects. Complaint at ¶ 19. In or about June 2020 ("the Recommencement Date"), the owner recommenced work on the Projects, and Patriot likewise recommenced work on the Projects. Complaint at ¶ 20. Plaintiffs aver that they were not requested to recommence their work under the Contracts following the stop work order or the Recommencement Date. Complaint at ¶ 21. Prior to the Recommencement Date, on or about May 2, 2020, Patriot emailed Plaintiffs to terminate the Contracts. Complaint at ¶ 24.

Following the Recommencement Date, Plaintiffs contend that Patriot elected to hire a different contractor to complete the Building 310 Work for which Level had been contracted, and that the Building 4220 Work had also been re-bid to another contractor. Complaint at ¶¶ 22, 23.

Plaintiffs claim that, "[a]t no time prior to Patriot's purported termination of the Contracts had they provided notice of default to Plaintiffs and afforded Plaintiffs an opportunity to cure, pursuant to the Contracts." Complaint at ¶ 25. Plaintiffs claim that the "termination of the Contracts for-cause by Patriot was wrongful and in violation of the terms of each of the respective Contracts," and that Plaintiffs are entitled "to the value of the profits lost pursuant to the Contracts." Complaint at ¶ 26. Plaintiffs do not contend that they provided services or materials on any of the Contracts for which they have not been paid. *See generally* Complaint.

In Count I of the Complaint, Level alleges that it "performed the 310 Building Work and fulfilled its obligations pursuant to the 310 Contract and changes." Complaint at ¶ 30. According to Level, "Patriot wrongfully purported to terminate the 310 Contract by failing to provide Level with at least three calendar days' notice of any alleged default, and provide an opportunity for Level to cure any such alleged default, thereby materially breaching its contract with Level."

5

Complaint at ¶ 31. Level claims that it would have made an additional "$330,000.00 in profit for completed work on the 310 Project" if Patriot had not terminated the contract. Complaint at ¶ 32. Pursuant to the 310 Contract, Level alleges, it is "entitled to attorney fees, costs, and expenses." Complaint at ¶ 36.

In Count II, Upper Bay alleges that, "at all times relevant, Upper Bay fulfilled its obligations pursuant to the 4188 Contract." Complaint at ¶ 39. According to Upper Bay, "Patriot wrongfully purported to terminate the 4118 Contract by failing to provide Upper Bay with at least three calendar days' notice of any alleged default, and provide an opportunity for Upper Bay to cure any such alleged default, thereby materially breaching its contract with Upper Bay." Complaint at ¶ 40. Upper Bay claims that it "would have made $21,000.00 in profit for completed work on the 4118 Project" if Patriot had not terminated the contract. Complaint at ¶ 41. Pursuant to the 4118 Contract, Upper Bay alleges, it is "entitled to attorney fees, costs, and expenses." Complaint at ¶ 45.

In Count III, Upper Bay claims that it "performed the 4220 Building Work and fulfilled its obligations pursuant to the 4220 Contract up and until Patriot wrongfully terminated the 4220 Contract." Complaint at ¶ 48. "Patriot wrongfully terminated the 4220 Contract," Upper Bay alleges, "by failing to award Upper Bay the new contract and failing to provide Upper Bay with at least three calendar days' notice of any alleged default, and provide an opportunity for Upper Bay to cure any such alleged default, thereby materially breaching its contract with Upper Bay." Complaint at ¶ 49. Upper Bay claims it "would have made an additional $315,000.00 in profit for completed work on the 4220 Project" if Patriot had not terminated the contract. Complaint at ¶ 50. Pursuant to the 4220 Contract, Upper Bay alleges, it is "entitled to attorney fees, costs, and

expenses." Complaint at ¶ 54. In total, Plaintiffs are seeking a total of $666,000.00 in compensatory damages for lost profit. Complaint ¶¶ 32, 41, 50.

In Count IV, Plaintiffs contend that Patriot has breached the Contracts by failing to pay Plaintiffs for all amounts due and owing "for work performed and labor supplied for the Projects." Complaint at ¶ 60. Plaintiffs contend that, of the total amount due Plaintiffs under the Contracts of $2,156,000.00, "Patriot has paid Plaintiffs $130,000.00 of that, leaving a balance in the amount of $666,000.00 in lost profits." Complaint at ¶ 62.

### III. Standard of Review

#### a. Rule[1] 12(b)(1) Motions to Dismiss

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1). *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 491 (D. Md. 2005). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.' " *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n. 4 (4th Cir.1999) (quoting 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed.1998)). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999).

Assuming a federal district court has original jurisdiction over a claim, 28 U.S.C. § 1367 permits the court to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367, "[t]he state and federal claims must derive from a common nucleus of operative fact" for the Court to exercise supplemental jurisdiction." *Axel Johnson, Inc. v. Carroll Carolina*

---

[1] Hereinafter, all references to "Rules" are to the Federal Rules of Civil Procedure.

*Oil Co.*, 145 F.3d 660, 662 (4th Cir.1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). However, the federal court may decline to exercise supplemental jurisdiction over a state law claim if the "claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

In cases where the "the district court has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction over a [non-original jurisdiction] claim." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); see *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well."); *Int'l Ass'n of Machinists*, 390 F. Supp. 2d 479 at 499 (D. Md. 2005) ("Under 28 U.S.C. § 1367(c)(3), the court has discretion to decline exercising supplemental jurisdiction over state law claims if the court 'has dismissed all claims over which it has original jurisdiction ....'").

    **b. Rule 12(b)(6) Motions to Dismiss**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need only satisfy the standard set forth in Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). The plaintiff's showing must be more than "a formulaic recitation of the elements

of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

The court must accept all well-pleaded factual allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citation omitted). But the court need not accept conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). As well, legal conclusions couched as factual allegations are insufficient. *Iqbal*, 556 U.S. at 678.

IV. Argument

A. Plaintiffs' Claims Against Patriot Must Be Dismissed, Because Each of the Subcontracts Expressly Permits Patriot to Terminate the Subcontract Without Cause or For Its Own Convenience, and Plaintiffs Waived Entitlement to Purported Lost Profits

In Counts I through III, Plaintiffs assert claims for breach of contract against Patriot, asserting that Patriot wrongfully terminated the Contracts by failing to give Plaintiffs "at least three calendar days' notice of any alleged default," and not providing Plaintiffs an opportunity "to cure any such alleged default." Complaint at ¶¶ 31, 40, 49. As a result, Plaintiffs contend that they are entitled to a total of $666,000.00 in lost profits. Complaint at ¶¶ 32, 41, 50. Plaintiffs do not allege that they provided any work under the Contracts for which they were not paid. Their claim is purely based on lost profits they did not realize under the Contracts after they were terminated.

As Plaintiffs note in their Complaint, prior to the Recommencement Date, on or about May 2, 2020, Patriot emailed Plaintiffs to terminate the Contracts. Complaint at ¶ 24. After that, under the Contracts, Patriot had no further obligations to Plaintiffs. Each of the Contracts provided that "PATRIOT shall have the right to terminate this Agreement, by written notice, **without**

9

**SUBCONTRACTOR being in default for any cause or for its own or OWNER's convenience**, and require SUBCONTRACTOR to immediately stop Work." Complaint at ¶¶ 11, 14, 17. Patriot did not need to give Plaintiffs "three calendar days' notice" nor an opportunity to "cure any such alleged default." It could simply terminate the Contracts by giving Plaintiffs written notice, which it did. Notwithstanding Patriot's express right to terminate the Contracts exactly in the manner in which it did, the Contracts also expressly provide that "**PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed.**" Complaint at ¶¶ 11, 14, 17.

Because Patriot terminated the Contracts[2] in a manner that is expressly contemplated by the Contracts, it was not in breach of those Contracts. Likewise, because Plaintiffs' only purported damages are for "lost profits" and because they expressly agreed that Patriot would not be liable "for any other costs, speculative damages, or for any prospective profits on Work not performed," their claims fail for that reason, as well. Accordingly, Plaintiffs claims against Patriot must be dismissed.

> **B. Plaintiffs' Miller Act Claim Must Be Dismissed, Because Patriot Did Not Breach the Contracts and Because The Miller Act Does Not Permit the Recovery of Lost Profits**
>
> **1. Hartford Cannot Be Liable Under the Miller Act for Sums That Patriot Has No Obligation to Pay**

Plaintiffs' claim against Hartford seeks damages in the amount of $666,000.00, which it claims are the profits it lost as a result of Patriot's purported breach of the Contracts. However, as explained *supra*, each of the Contracts provided that "PATRIOT shall have the right to terminate this Agreement, by written notice, **without SUBCONTRACTOR being in default for any cause**

---

[2] Plaintiffs' claims for attorneys' fees pursuant to the Contract must also fail because nothing in the Contracts provide a basis for Plaintiffs to recoup attorneys' fees from Patriot.

10

**or for its own or OWNER's convenience**, and require SUBCONTRACTOR to immediately stop Work." Complaint at ¶¶ 11, 14, 17. As a result, Plaintiffs' contention that Patriot wrongfully terminated the Contracts is without merit. Likewise, Plaintiffs' claim for lost profits also fails, because the Contracts also expressly provide that **"PATRIOT shall not be liable to SUBCONTRACTOR for any other costs, speculative damages, or for any prospective profits on Work not performed."** Complaint at ¶¶ 11, 14, 17. Accordingly, Patriot did not breach its Contracts with Plaintiffs and the Plaintiffs are otherwise not entitled to lost profits. Hartford, as Patriot's surety, cannot be liable to Plaintiffs under the Miller Act for sums that Patriot has no obligation to pay. For that reason alone, Plaintiffs' claim against Hartford must be dismissed.

2. **Lost Profits Are Not Available Under the Miller Act**

Plaintiffs' Complaint, on its face, only seeks damages for lost profits from work it never performed. Complaint at ¶ 26 However, the Miller Act, *on its face*, only applies to a person who "furnished labor or material in carrying out work provided for in a contract" and "that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material. . . ." 40 U.S.C. § 3133. Plaintiffs cleverly allege that they were not paid within 90 days after they *invoiced* Patriot for the *profits* they claim they lost as a result of the Contracts being terminated, but they make no *well-pleaded* allegation that Patriot failed to pay Plaintiffs for labor or material that they furnished on the Project. Complaint at ¶ 64.

Plaintiffs' Complaint *does* include the conclusory allegation that "Patriot has breached the Contracts by failing to pay Plaintiffs for all amounts due and owing to Plaintiffs under the Contracts for *work performed and labor supplied* for the Projects." Complaint at ¶ 60. But this Court need not accept such conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters*, 604 F.2d at 847. Plaintiffs' Complaint makes it abundantly clear that

11

its damages are solely lost profits from work that it was not able to perform. Complaint at ¶ 26 ("The termination of the Contracts for-cause by Patriot was wrongful and in violation of the terms of each of the respective Contracts, entitling Plaintiffs to the value of the profits lost pursuant to the Contracts."). This Court should not accept Plaintiffs' transparent attempt to plead around their deficient Miller Act bond claim, where nowhere else in its Complaint do they remotely allege performing work for which they were not paid.

The Miller Act is designed to aid subcontractors who could not otherwise avail themselves of remedies like mechanics' liens for unpaid work, and not subcontractors, like Plaintiffs, whose contract was terminated but whom have been paid for any work they performed:

> The purpose of a Miller Act payment bond is to protect subcontractors and suppliers who provide labor and material for a federal project, because federally owned lands or buildings are exempt from the liens that would normally secure these parties' rights under state law. To effectuate this congressional intent, the Miller Act is to be liberally construed and applied. But a liberal construction does not mean that the Miller Act establishes an unlimited basis for recovery; courts have held that the Miller Act surety is not liable for damages caused by the prime contractor's breach of contract. Thus, for example, in the present case National Union *would not be liable to Pertun for profits lost as the result of Harvester's premature and wrongful termination of the subcontract*. It would be liable, on the other hand, for any "sum or sums justly due" Pertun for labor or material furnished in the performance of its agreement to work on the public project.

*U.S., for Use & Benefit of Pertun Const. Co. v. Harvesters Grp., Inc.*, 918 F.2d 915, 918 (11th Cir. 1990) (internal citations omitted) (emphasis added); *United States v. Cont'l Cas. Co.*, No. CV ELH-16-3047, 2018 WL 4052246, at *12 (D. Md. Aug. 23, 2018) (citing *Pertun* favorably and holding that "[t]he use value of [a subcontractor's] own equipment ... is far more analogous to *lost profits—for which recovery against the surety is not allowed*—than to actual expenditures for labor or materials utilized in the performance of the subcontract") (emphasis added); *U.S. for Use & Benefit of T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Texas*, 942 F.2d 946 (5th Cir. 1991) (Subcontractor could not recover from Miller Act surety profits on out-of-pocket

expenditures attributable to delay by prime contractor or government; claim for profit did not involve actual outlay and fell outside both letter and spirit of Miller Act.).

Here, Plaintiffs are asserting a Miller Act bond claim against Hartford based on an alleged breach of contract by Patriot and lost profits. Their claim fails first because, as a matter of law, Patriot did not breach the Contracts and Plaintiffs are not entitled to lost profits under the Contracts. But *even if there were a breach*, which there was not, Plaintiffs' claim would still fail because lost profits are not recoverable under the Miller Act. Accordingly, Plaintiffs' claim against Hartford must be dismissed.

### C. Plaintiffs' Claims Against Patriot Should Be Dismissed For Lack of Subject Matter Jurisdiction or This Court Should Decline to Exercise Jurisdiction.

Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 40 U.S.C. § 3133 and 28 U.S.C. § 1367. Complaint at ¶ 5. Plaintiffs do not assert any factual allegations as to why this Court has subject matter jurisdiction under these statutes. For the sake of this Motion, Defendants presume that Plaintiffs assert that this Court has subject matter jurisdiction under 40 U.S.C. § 3133, which applies to Miller Act bond claims, under this Court's original jurisdiction pursuant to 28 U.S.C. § 1331. Defendants further presume that Plaintiffs assert subject matter jurisdiction over their state law breach of contract claims under 28 U.S.C. § 1367 pursuant to this Court's supplemental jurisdiction over certain state law claims that are related to claims over which this Court has original jurisdiction, i.e., Plaintiffs' Miller Act bond claim.

### 1. Because Plaintiffs' Miller Act bond claim should be dismissed, this Court should not exercise jurisdiction over Plaintiffs' state law breach of contract claims.

Pursuant to 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." In the event this Court dismisses Plaintiffs' Miller Act bond claim, then it should decline to

exercise jurisdiction over Plaintiffs' remaining state law claims (if it does not dismiss those claims on the merits, as well). *See Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well.").

**2. Because Plaintiffs' breach of contract claims predominate over their Miller Act bond claim, this Court should not exercise jurisdiction over Plaintiffs' state law breach of contract claims.**

Pursuant to 28 U.S.C. § 1367(c)(2), this Court may also decline to exercise supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." Here, Plaintiffs' Miller Act bond claim flows from and is entirely reliant upon Plaintiffs' claims for lost profits due to Patriot's purported breach of contract. As the forum state, Maryland state courts would have a greater interest in adjudicating the claims than this Court, if Plaintiffs' claims could be brought in a court of law at all.

**3. This case should be dismissed because each of the Contracts has a mandatory arbitration provision.**

In addition to ignoring the provision in the Contracts which expressly permits Patriot to terminate the Contracts for any cause or for convenience, Plaintiffs ignored the mandatory arbitration provision in each of the Contracts, which provides as follows:

> MANDATORY AND BINDING ARBITRATION AGREEMENT: In the event of any dispute between PATRIOT and SUBCONTRACTOR arising under or relating to this Agreement, which is not an OWNER-Related Dispute, the dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect, unless the parties agree otherwise.

Complaint Exhibit 1 at p. 5; Complaint Exhibit 2 at p. 4; Complaint Exhibit 3 at p. 5. Plaintiffs' Complaint contains no allegation that the parties agreed not to submit any claims to arbitration. Accordingly, if the Court does not grant Defendants' Motion for the other reasons stated herein, then Plaintiffs' Complaint should be dismissed on account of Plaintiffs' failure to submit their claims to binding arbitration pursuant to the Contracts.

## V. Conclusion

**WHEREFORE**, Defendants, Patriot and Hartford, respectfully request that this Honorable Court enter an Order dismissing Plaintiffs' Complaint and for any such other relief as this Court deems just and proper.

> Respectfully submitted,
>
> COUNCIL, BARADEL,
> KOSMERL & NOLAN, P.A.
>
> /s/ *Stephen A. Oberg*
> Stephen A. Oberg #15207
> N. Tucker Meneely #29622
> 125 West Street, Fourth Floor
> Annapolis, Maryland 21401
> (410) 268-6600
> (410) 269-8409 Fax
> Oberg@CouncilBaradel.com
> Meneely@CouncilBaradel.com
> *Attorneys for Defendants*

Dated: March 18, 2021